John Jay HOOKER

v.

FEDERAL ELECTION COMMISSION,
et al.

No. 3-99-0794.

United States District Court,
M.D. Tennessee,
Nashville Division.

April 12, 2000.

John Jay Hooker, Nashville, TN, plaintiff pro se.

Greg J. Mueller, Richard B. Bader, Lawrence M. Noble, Stephen E. Hershkowitz, Federal Election Commission, Washington, DC, for Federal Election Commission, defendant.

Robert C. Watson, Office of the United States Attorney, Nashville, TN, for Janet Reno, defendant.

Robert E. Cooper, Jr., W. Brantley Phillips, Jr., Bass, Berry & Sims, Nashville, TN, for Democratic National Committee, defendant.

Courtney N. Pearre, Nashville, TN, for Republican National Committee, defendant.

David G. Rogers, Brentwood, TN, for Pat Buchanan, individually and representing other republican candidates for President as a class, defendant.

Paul C. Ney, Jr., Doramus, Trauger & Ney, Nashville, TN, for William Frist, individually and representing other members of Congress as a class, Michael Cook, defendants.

Janet M. Kleinfelter, Office of the Attorney General, Nashville, TN, for Don Sundquist, in his capacity of Governor of Tennessee, Paul Summers, in his capacity as Attorney General of Tennessee, defendant.

Paul C. Ney, Jr., Doramus, Trauger & Ney, Nashville, TN, Bobby R. Burchfield, Jason A. Levine, Washington, DC, for John McCain, U.S. Senator, Mitch McConnell, U.S. Senator, Brice Clagett, defendants.

Micajah Clark Spoden, Brown, Todd & Heyburn, PLLC, Nashville, TN, for Robert Torricelli, U.S. Senator, Harold E. Ford, Jr., Representative, defendants.

William J. Olson, John S. Miles, William J. Olson, P.C., McClean, VA, for Howard Phillips, Constitution Party, defendants.

John L Ryder, Apperson, Crump, Duzane & Maxwell, Memphis, TN, for George W. Bush, defendant.

Wayne Lindsey Robbins, Jr., Gullett, Sanford, Robinson & Martin, Nashville, TN, for The Libertarian Party, defendant.

### MEMORANDUM

HIGGINS, District Judge.

The Court has before it the motion of State defendants Governor Don Sundquist and Tennessee Attorney General Paul Summers (filed October 4, 1999; Docket Entry No. 13) to dismiss the plaintiff's complaint, their memorandum (Docket Entry No. 14) in support and their motion (filed December 1, 1999; Docket Entry No. 58) to dismiss the plaintiff's amended complaint;[1] the motion of the Republican National Committee (filed October 20, 1999; Docket Entry No. 41) to dismiss, its memorandum (Docket Entry No. 42) in support and its motion (filed December 31, 1999; Docket Entry No. 84) to dismiss the plaintiff's amended complaint; the motion of defendant Patrick Buchanan (filed October 22, 1999; Docket Entry No. 44) to dismiss and his memorandum (Docket Entry No. 45) in support; the motion of defendant Federal Election Commission (filed October 25, 1999; Docket Entry No. 47) to dismiss the plaintiff's complaint, its memorandum (Docket Entry No. 48) in support and its motion (filed October 28, 1999; Docket Entry No. 50) to dismiss the plaintiff's amended complaint; the motion of defendants Senator Robert Torricelli and Congressman Harold Ford, Jr. (filed November 12, 1999; Docket Entry No. 51) to dismiss and their memorandum in support (Docket Entry No. 52); the motion of the Democratic National Committee (filed November 24, 1999; Docket Entry No. 57) to dismiss; the motion of defendant Michael Cook (filed December 8, 1999; Docket Entry No. 85) to dismiss and his memorandum (Docket Entry No. 86) in support; the motion of Senator William Frist (filed December 13, 1999; Docket Entry No. 89) to dismiss and his memorandum in support (Docket Entry No. 90); the motion of Howard Phillips and the Constitution Party (filed December 15, 1999; Docket Entry No. 94) to dismiss and their memorandum (Docket Entry No. 95) in support; the motion of the Libertarian Party (filed December 21, 1999; Docket Entry No. 98) to dismiss and its memorandum (Docket Entry No. 100) in support; the motion of George W. Bush (filed December 22, 1999; Docket Entry No. 101) to dismiss and his memorandum (Docket Entry No. 102) in support; the motion of United States Attorney General Janet Reno (filed February 14, 2000; Docket Entry No. 111) to dismiss and her memorandum (Docket Entry No. 112) in support; the plaintiff's response (filed February 25, 2000; Docket Entry No. 113) and memorandum (Docket Entry No. 115) in support; the plaintiff's amended response (filed February 28,

---

1. The amended complaint (filed October 18, 1999; Docket Entry No. 15) added as defendants, Senators John McCain, Robert Torricelli and Mitch McConnell, Michael Cook, Brice Clagett, Harold E. Ford, Jr., Warren Beatty, Ralph Nader, Donald Trump, Howard Phillips, George W. Bush, The Libertarian Party, The Constitution Party, The Greens/Green Party USA, American Association of State Green Parties, and the Reform Party of the United States.

2000; Docket Entry No. 116), his memorandum (Docket Entry No. 117) in support and his supplemental memorandum (filed March 22, 2000; Docket Entry No. 135); the motions of defendant Brice Clagett and defendants Senators Mich. McConnell and John McCain (filed March 14, 2000; Docket Entry Nos. 127, 129 and 131) to dismiss and their memorandums (Docket Entry Nos. 128, 130 and 132) in support. Also before the Court is the plaintiff's memorandum (filed April 6, 2000; Docket Entry No. 143) of law and argument.[2]

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

The plaintiff challenges two laws regarding campaign funds for the presidential and congressional elections—the Presidential Primary Matching Payment Account Act, 26 U.S.C. § 9031, et seq., and the Presidential Election Campaign Fund Act, 26 U.S.C. § 9001, et seq. He also challenges the Federal Election Campaign Act of 1971, as amended, 2 U.S.C. §§ 431 et seq. The FEC moves the Court to dismiss this action based on collateral estoppel, lack of standing and failure to state a claim for which relief may be granted.

For the reasons stated below, the FEC's motions to dismiss shall be granted and this action will be dismissed on the basis of estoppel and lack of standing. Therefore, the motions to dismiss of the remaining defendants are moot.

## I.

### A. Presidential Primary Matching Payment Account Act and Presidential Election Campaign Fund Act

■ The Presidential Primary Matching Payment Act provides partial federal financing for the campaigns of eligible presidential primary candidates by match-

ing private contributions made to their campaigns up to a certain amount. The Presidential Election Campaign Fund Act provides full public funding for qualified presidential election candidates.

The plaintiff contends that the Presidential Primary Matching Payment Account Act is unconstitutional because the private contributions upon which matching funds are based are unconstitutional "under the Vth and XIVth Amendments as they discriminate among voters based upon wealth and thereby violate the 'one-man, one-vote' requirement in Baker v. Carr, supra." Amended complaint (Docket Entry No. 15) at 6. He further states that "[t]here is no difference in discrimination based on geography than in discrimination based on wealth. And, consequently, 'matching funds' 'piggy-backed' on unconstitutional contributions provided by the wealthy and well-born are unconstitutional as said 'piggy-backed' contributions." Id. The plaintiff also contends that the Presidential Primary Matching Payment Account Act and Presidential Election Campaign Fund Act are unconstitutional because Congress has no power with respect to presidential elections beyond that specified in Article I, § 4 of the United States Constitution.[3] Therefore, it cannot authorize the appropriation of campaign funds.

The FEC asserts that the plaintiff's claim must fail for lack of standing because he does not satisfy the prudential standards required for standing. As this Court stated in Hooker v. Sasser, the "Supreme Court has held that an alleged harm which is a 'generalized grievance shared in substantially equal measure by all or a large class of citizens' does not warrant the exercise of the court's juris-

---

2. Pursuant to the plaintiff's notices of dismissal, the claims against defendants Messrs. Trump and Nader and The American Association of State Green Parties and the Greens/Green Party USA were dismissed. See orders (Docket Entry Nos. 88, 107, 121 and 122). Mr. Beaty, Vice President Gore and the Reform Party have not responded to the plaintiff's amended complaint.

3. This section states "The Times, Place and Manner of holding Elections for Senators and Representatives, shall be prescribed in each state by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4.

diction." 893 F.Supp. 764 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975)). In *Warth,* the Court stated that such limitations are necessary because otherwise, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 497 n. 8, 95 S.Ct. 2197 (quoting *Warth,* 422 U.S. at 500, 95 S.Ct. at 2205–06, 45 L.Ed.2d at 355).

The Court agrees that Mr. Hooker's challenges to the Primary Matching Payment Account Act and the Presidential Election Campaign Fund Act state generalized grievances which would be better addressed by the Congress. Accordingly, the Court shall dismiss these claims for lack of standing.

B. *Interstate Campaign Contributions*

The FECA regulates campaign contributions and expenditures in federal elections. A preemption provision in the FECA states that "this Act, and any rules prescribed under this Act, supersede and preempt any provision of state law with respect to election to Federal office." Title 2 U.S.C. § 453. The plaintiff contends that this section of the FECA impermissibly prevents the State of Tennessee from promulgating a law prohibiting the acceptance and use of interstate campaign contributions for those running for Congress from Tennessee. The plaintiff contends that, as a result, the FECA violates the United States and Tennessee constitutions because the effect of the plaintiff's vote is diluted when Tennessee political candidates running for United States Congress accept and use campaign contributions from outside the State of Tennessee.[4] He asks the Court to declare this section unconstitutional and to enjoin United States Senatorial candidates in Tennessee from

receiving or using out-of-state campaign contributions in the upcoming election.

The plaintiff has challenged the constitutionality of interstate campaign contributions in previous actions in this Court. The previous actions were dismissed, and the FEC contends that the plaintiff is estopped from relitigating in this action the basis for the former dismissals and, therefore, his claims should be dismissed.

The first of these earlier cases was *Hooker v. Sasser,* 893 F.Supp. 764 (M.D.Tenn.1995) (Higgins, J.). In that case, the plaintiff, then a Senatorial candidate, and two registered voters and citizens of the State of Tennessee sued James Sasser and William Frist, United States Senatorial candidates running in the November 8, 1994, elections in Tennessee, and their campaign committees. The plaintiffs claimed that interstate campaign contributions violated the Constitution of the State of Tennessee, as well as the United States Constitution, because the acceptance and use of such contributions diluted the weight of the plaintiffs' votes, denied voters the undivided loyalty of their Senators and denied Senatorial candidates the right to be elected exclusively by Tennessee citizens. Accordingly, the plaintiffs sought declaratory judgment and an order prohibiting the defendants from soliciting or accepting contributions from those who were not residents of Tennessee.

The Court dismissed the plaintiffs' cause of action pursuant to Fed.R.Civ.P. 12(b)(1), on the basis that the plaintiffs lacked standing. The Court listed the following elements required to establish standing: " '(1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the challenged conduct; and (3) it must be likely that a favorable decision will remedy the injury.' " *Hooker,* 893 F.Supp. at 767 (quoting *Lujan v. Defenders of Wildlife,*

---

**4.** FECA does not authorize individuals or groups to contribute to campaigns in other states.

504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992)).

The Court found that the plaintiffs did not have standing to bring their claims because their claims did not constitute an injury in fact. It stated that:

> diluted voting power, denial of undivided loyalty, and denial of the right to have their Senators exclusively elected by Tennessee citizens do not identify any "concrete and particularized" injury which they have suffered or will suffer because of the defendants' conduct. Such generalized and conjectural allegations fall far short of the requirement of a "distinct and palpable injury." ... In essence, these allegations merely suggest that Tennessee citizens may be injured as a result of contributions of non-citizens of Tennessee, which is unquestionably a generalized and hypothetical injury.

*Hooker*, 893 F.Supp. at 767. The Court further found that the plaintiffs did not have prudential standing because they alleged a " 'generalized grievance shared in substantially equal measure by all or a large class of citizens' [which] does not warrant the exercise of the Court's jurisdiction" *Id.* (quoting *Warth*, 422 U.S. at 499, 95 S.Ct. at 2204, 45 L.Ed.2d at 355).

Although the Court found that the plaintiffs' claim that Mr. Hooker was denied the right to have exclusively Tennessee voters judge his qualifications as a Senatorial candidate was "particularized," the Court also found that the injury was "hypothetical and conjectural." *Id.* It explained that "[t]here is no evidence that prohibiting acceptance of contributions from non-citizens would have had any impact in the election of Senators whatsoever, much less that it would have enabled Mr. Hooker to be successful in his campaign." *Id.* Accordingly, the Court dismissed the plaintiffs' claims under Rule 12(b)(1).

In 1995, Mr. Hooker filed suit against Senators Fred Thompson and William Frist challenging the constitutionality of interstate campaign contributions. *Hooker v. Thompson*, No. 3–95–0688 (M.D.Tenn. filed July 20, 1995) (Echols, J.). The Court found that the plaintiff was asserting the same claims under the United States and Tennessee Constitutions he asserted in *Hooker v. Sasser*, No. 3–94–0750 and that "[h]e has asserted no new facts to support the proposition that he now has standing to bring this suit." *Id.* Accordingly, the Court held that "the doctrine of direct estoppel precludes him from bringing the present suit." *Id.* Likewise, the FEC contends that the plaintiff is estopped from bringing his present claim that interstate campaign contributions violate the Tennessee and United States constitutions.

■ In order for estoppel to apply, four factors must be present:

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(2) determination of the issue must have been necessary to the outcome of the prior proceeding;

(3) the prior proceeding must have resulted in a final judgment on the merits; and

(4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*N.L.R.B. v. Kentucky May Coal Co., Inc.*, 89 F.3d 1235, 1239 (6th Cir.1996).

■ As previously stated, the plaintiff has raised and litigated the issue of the constitutionality of interstate campaign contributions in the prior proceedings of *Hooker v. Sasser* and *Hooker v. Thompson*. In those proceedings, the determination that the plaintiff lacked standing was "necessary to the outcome." *Id.* Third, the prior proceedings resulted in a final judgment. Even though the decisions are not judgments on the merits, as Judge Echols noted in his memorandum dismissing the plaintiff's claims against Senators Thompson and Frist, the United States Supreme Court has found that a decision may be the basis for issue preclusion even if it was

dismissed earlier because of a jurisdictional issue and not because of a decision on the merits. *See, Hooker v. Thompson,* No. 95–0688, 6–7 (citations omitted). Finally, the plaintiff does not contest that he was not given a full and fair opportunity to litigate the issue of estoppel in *Hooker v. Thompson.*

Based on the Court's decisions in *Sasser* that the plaintiffs lacked standing and in *Thompson* that Mr. Hooker is estopped from challenging the constitutionality of interstate campaign contributions, the Court again finds that the plaintiff is estopped from bringing his current claims regarding interstate campaign contributions in the instant action. Accordingly, the FEC's motion to dismiss will be granted with respect to these claims.

## II.

For the reasons set forth above, the FEC's motions to dismiss shall be granted based on lack of standing and estoppel grounds. As the determination of the FEC's motion is dispositive of this action in its entirety, the motions of the remaining defendants will be deemed moot.

An appropriate order shall be entered.

## *ORDER*

In accordance with the memorandum contemporaneously entered, the motions (filed October 25, 1999; Docket Entry Nos. 47 and 50) to dismiss of the Federal Election Commission are granted.

As the FEC's motion is dispositive of this action in its entirety, the plaintiffs' motions (filed March 20, 2000 and April 7, 2000; Docket Entry Nos. 134 and 144) to add defendants and the motions (Docket Entry Nos. 13, 58, 41, 84, 44, 51, 57, 85, 89, 94, 98, 101 and 111) to dismiss are deemed moot.

This action is dismissed with prejudice.

The entry of this order and the orders (Docket Entry Nos. 88, 107, 121 and 122) entered December 13, 1999; January 7

and 13, 2000, and March 10, 2000, constitute the judgment in this action.

It is so ORDERED.